CREAMERY PACKAGE MANUF'G CO. *v.* ELGIN CO-OP. BUTTER TUB CO.

*(Circuit Court, N. D. Illinois.   July 31, 1890.)*

1. PATENTS FOR INVENTIONS—NOVELTY.
    Letters patent No. 294,764, granted March 11, 1884, to Matthew Corcoran, for a "machine for trussing tubs," are not void for want of patentable novelty, as the combination, consisting of recessed standards. with truss-hoops, removable bottom, and driving weight, is new, though its constituent elements had long been in use.
2. SAME—INFRINGEMENT—EQUIVALENTS.
    Claim 2 of letters patent No. 294,764, granted March 11, 1884, to Matthew Corcoran, for a "machine for trussing tubs" covering a combination of recessed standards, with truss-hoops, removable bottom, and driving weight, is infringed by letters patent No. 356,217, granted January 18, 1887, to F. W. Ulrich, for the same kind of machine, wherein the device is a recessed iron pot, with removable bottom and truss-hoops placed in the recesses, as the latter device is simply an equivalent of the former.

In Equity.
*Manahan & Ward*, for complainant.
*James Coleman* and *John G. Elliott*, for defendant.

BLODGETT J.   This is a bill in equity seeking an injunction and accounting by reason of the alleged infringement of patent No. 294,764, granted March 11, 1884, to Matthew Corcoran, for a "machine for trussing tubs."   The patentee describes his invention in the specification as follows:

"My invention has reference to improvements in machinery for trussing or setting up tubs, having more special reference to the manufacture of butter-tubs, which latter are now in great demand as a means for packing, preserving, and transporting butter.   Such improvements consist mainly in novel mechanism for supporting the truss-hoops horizontally, at proper distances above each other to receive the staves, and the employment of a drop-weight to force the staves into such truss-hoops while the latter are supported in certain relative positions."

The device covered by the patent consists of three standards placed at equal distances apart in the periphery of a circle, and in the inner faces of which recesses are formed for the truss-hoops to rest upon.   These recesses recede from each other so that the upper ones hold the larger-sized truss-hoops, as the tub is trussed small ends downwards.   These recesses are so arranged as to hold the truss-hoops in place, and below these recesses, marked "1" in the drawings, is another recess, marked "2" in the drawings, for holding a removable bottom to the machine. There is also a drop-bottom, that is, a bottom which is hung upon a lever, and so arranged as that by an action of the foot upon a treadle it may be pressed upward to hold the ends of the staves while they are being put in place.   After the staves are properly arranged, a weight suspended over the machine is dropped upon the upper ends of the staves for the purpose of driving the staves to place.   The patentee then describes the operation of his machine as follows:

"The operator places his foot on the outer end of the lever, bringing such end down upon the floor, and by the same motion forcing the movable bottom up against the under edge of the lower truss-hoop, the truss-hoops having

been placed in their several positions in the recesses, 1. The staves are then placed within the truss-hoops around the entire inner circumference of the latter. The upper edge of the lower truss-hoop is provided on its upper edge with an inward bevel to assist in guiding the lower ends of the staves into proper position. The operator's foot is then withdrawn from the lever, and the bottom thereby drops slightly away from the lower truss-hoop. The drop-weight is then permitted to fall upon the upper ends of the staves, forcing the latter tightly into such truss-hoops."

Infringement is insisted upon only as to the second claim of the patent, which is:

"(2) The combination of the standards, A, provided with recessess, 1 and 2, on the inner faces thereof, the truss-hoops, B, fitted to rest in such recesses, 1, the removable bottom, I, fitted to rest in such recesses, 2, the weight, G, arranged to be suspended over and dropped upon the upper ends of the staves, C, within such hoops, and the rope, H, substantially as shown, and for the purpose specified."

The defenses insisted upon are (1) want of patentable novelty; (2) that defendants do not infringe. It will be noticed that the claim in question is solely for a combination of elements. It is not insisted that any of these elements are new, but that the combination is new, and, although the defendants have introduced a large number of patents, covering the whole field of construction and trussings of barrels by machinery, I do not find in this mass of testimony any such combination as is shown in the complainant's patent. There is proof in the record of vertical standards to hold the truss-hoops and of bottoms to receive the ends of the staves, but the proof fails to show a combination of recessed standards with the truss-hoops and the removable bottom and the driving weight, as claimed in this patent. It is also urged by the defendants' counsel that the bottom, I, provided for in the patent, is not removable, and that it cannot be taken out or placed into the recesses, 2, and that hence the claim is inoperative. This is manifestly a mistake of fact, as the drawings clearly show that the bottom, I, may be removed, and the specifications state that after the tub has been fired "the bottom, D, is removed and the bottom, I, is placed in the lower recesses, 2." No reason is perceived, either from the specifications or the drawings, why this bottom, I, may not be placed in these recesses, 2, and removed therefrom, as it is not necessary that it shall fit snugly into these recesses, but play enough may be given it to allow of sufficient tipping to put the plate into and take it out of the recesses, and, inasmuch as the directions for use of the device require the bottom, I, to be placed in those recesses for the final process of tightening the truss-hoops, any person constructing the machine would provide room for taking out and putting in the bottom, I, from these recesses. Not finding in the proofs any anticipation of the combination covered by this second claim, and the utility of the machine being abundantly shown, from the fact that it has gone widely into use, and that the defendants in fact use it in substantially the form of the patent, I must find that the defense of want of patentable novelty is not sustained.

As to the question of infringement it is conceded that the defendants

are manufacturing butter-tubs with a machine constructed substantially after the directions and specifications in patent No. 356,217, granted January 18, 1887, to F. W. Ulrich, and there can be no doubt from an inspection of Ulrich's drawings and specifications that the principle of the complainant's machine has been adopted in the drawings of that machine. It is true that the Ulrich machine, instead of having three recessed standards to support the truss-hoops in a horizontal position has an iron pot, with recesses or rests, within which the truss-hoops are placed; but this iron pot in no way differs in its operation from the complainant's frame or standards. The drawings of the Ulrich patent would seem to indicate that the bottom of the tub is solid or integral with its sides, but the proof shows that the machines used by the defendant and which are claimed to be Ulrich machines, have no bottom, and that a removable bottom is used the same as is provided for in the complainant's machine, so that I see no escape for the defendant upon the issue of non-infringement. The pot with the bottom removed is certainly nothing but the equivalent of the complainant's recessed standards for supporting the truss-hoops, and, as undoubtedly the defendant has found in practical working that a removable bottom is necessary to the successful use of the device, they have removed the bottom, and thereby more fully conformed to the construction of an operative machine under the complainant's patent. For these reasons I find that the defendants have infringed, as charged in the bill of complaint, and a decree may be entered accordingly, with a reference to a master to inquire as to the damages.